Filed 10/17/22  P. v. Buchanan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE, | C093713 |
| Plaintiff and Respondent, | (Super. Ct. No. 19CR28533) |
| v. | |
| KYLE JAMES BUCHANAN, | |
| Defendant and Appellant. | |

While Tina G. aggressively punched and kicked defendant Kyle James Buchanan, defendant got in his car and backed up.  Tina was apparently hit by the open driver's side door, swept underneath the car, and run over.  She suffered visibly catastrophic injuries from which she later died.  After a jury trial, defendant was convicted of several offenses including voluntary manslaughter.  The trial court sentenced him to an upper term of 11 years in state prison.  On appeal, defendant argues that the trial court prejudicially erred when it admitted unreliable and uncorroborated evidence of prior instances of domestic violence committed by defendant against Tina, much of which was based on Tina's allegations alone, but refused to admit evidence that Tina made prior false allegations of

1

domestic violence against a third party. Defendant argues that these rulings offend due process because, in a "he said/she said" situation, the jury should have considered other situations in which Tina lied about domestic violence. Defendant also contends that he is entitled to a new sentencing hearing so that he may receive the benefit of recent legislative changes to sentencing statutes. We agree defendant is entitled to the benefits of recent legislative changes and therefore, remand the cause for a new sentencing hearing. We otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Given the nature of the instant appeal, we briefly summarize the facts supporting the convictions. We will expand upon facts necessary for the resolution of each issue as we address them.

In late 2017 or early 2018, defendant began dating Tina G. She was married to Scott G., but they were separated at the time. Defendant and Tina lived together from January 2018 through January 2019 in defendant's house. Defendant described their relationship as "good" for 90 to 95 percent of the time. On January 18, 2019, defendant and Tina fought. Defendant got in his car and in the process of backing out of the driveway to the street, defendant ran over Tina with his car.

The prosecution charged him with first degree murder (Pen. Code, § 187) (count I); vehicular manslaughter (Pen. Code, § 192, subd. (c)(1)) (count II); assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) with the special allegation that he inflicted great bodily injury (Pen. Code, § 12022.7, subd. (e)) (count IV); and inflicting corporal injury to a girlfriend (Pen. Code, § 273.5, subd. (a)) with the special allegations that he inflicted great bodily injury (Pen. Code, § 12022.7, subd. (e)) and that he used a deadly weapon (Pen. Code, § 12022, subd. (b)(1)) (count III).

At trial, defendant's neighbor, Sandra Sifford, testified that she saw Tina and defendant argue. At one point, defendant reached into Tina's car and Tina yelled at him to return her wallet. Defendant walked toward his car and Sifford said that Tina "started

2

beating him up," "wailing on him over and over" and hitting him "like a man," punching and kicking him around 50 to 60 times. Sifford did not see defendant act aggressively in return. Defendant got into his car; the driver's door was still open. Tina continued to kick and punch defendant. Sifford could see Tina hit the top of the car and kick defendant. Sifford said she saw Tina "lean[] slightly backwards," then heard a clunk, saw Tina lean forward toward defendant's car, and as defendant backed up, Tina went backwards on her right leg and then went forward. Sifford did not hear the motor "rev" or the tires "peeling out." It was her opinion that defendant hit Tina with the door of the car while driving in reverse. Tina was lying on the ground and defendant got out of his car and went to Tina. Sifford went outside and could hear Tina moaning and speaking to defendant. At defendant's request, Sifford called 911.

Defendant testified that he saw Tina move away, assumed she would continue to move away from his moving car, and he backed out of the driveway. Defendant said the incident was an accident that happened very quickly; he never meant to hit her.

Christi Buchanan, defendant's ex-wife, testified that at some point after Tina's death, defendant told Buchanan that his fight with Tina was intense and when he tried to leave, the car door was open. She was kicking and punching him "like a dude" and defendant said he meant to hit her with the door to make it stop but not to kill her. Buchanan also acknowledged that defendant repeatedly said it was an accident.

The jury heard evidence of prior acts of domestic violence between defendant and Tina admitted pursuant to Evidence Code section 1109 and was instructed as to the proper use and consideration of that evidence with CALCRIM No. 852A.

As to the elements of the offense, the jury was instructed regarding count I on first and second degree murder, as well as voluntary manslaughter. The jury was also instructed on both felony and misdemeanor vehicular manslaughter under count II.

The jury found defendant not guilty of first or second degree murder, but guilty of voluntary manslaughter (Pen. Code, § 192, subd. (a)) (count I), felony vehicular

3

manslaughter (Pen. Code, § 192, subd. (c)(1) (count II), assault with a deadly weapon and found true the special allegation that he inflicted great bodily injury (Pen. Code, § 245, subd. (a)(1); Pen. Code, § 12022.7, subd. (e)) (count IV), and inflicting corporal injury to a girlfriend (Pen. Code, § 273.5, subd. (a)) and found true the special allegations that he inflicted great bodily injury (Pen. Code, § 12022.7, subd. (e))[1] and that he used a deadly weapon (Pen. Code, § 12022, subd. (b)(1)) (count III).

The trial court sentenced defendant to an upper term of 11 years in state prison.

## DISCUSSION

### I

### *Prior Allegations of Domestic Violence*

Defendant claims that evidence of past domestic violence against Tina was improperly admitted under Evidence Code section 1109[2] because it was unreliable, could not be corroborated and violated his right to due process. Defendant also claims that, especially in light of the admission of such evidence, the trial court erred in refusing to admit evidence that Tina previously made false allegations of domestic violence against her husband, Scott G. The People argue that defendant forfeited most of his claims and that the evidence against him was properly admitted. The People assert that the trial court properly excluded evidence of Tina's false allegations and that any error was harmless. We conclude that there was no error.

*A. Additional Background*

Prior to trial, defense counsel sought to exclude any testimony that Tina was the victim of prior domestic violence by defendant. Specifically, there was evidence that in the past Tina suffered a black eye, bruises on her arms and legs and a cracked rib.

---

[1] We note the abstract of judgment incorrectly lists Penal Code section 12022.7, subdivision (d). We will address this error below.

[2] Undesignated statutory references are to the Evidence Code.

Defense counsel argued that Tina never suggested that defendant was responsible for those injuries. Accordingly, such evidence would be inadmissible under sections 210 and 350 (relevance), 702 (witness personal knowledge), and 800 (witness opinion). The People disagreed and requested that several pieces of evidence be admitted under section 1109. The prosecution argued that one of Tina's coworkers could testify that Tina explained the black eye to her by stating, "Kyle hit me." The prosecution also sought to introduce evidence of prior incidents, through the testimony of Tina's daughter, Cassidy, and Cassidy's girlfriend Veronica. In one incident, Cassidy and Veronica were sleeping in a tent on defendant's property when Tina purportedly came into the tent and told them defendant had a gun. Cassidy could also describe another event in which she heard defendant threaten to hit Tina.

The trial court ruled that the coworker's statement that Tina said that Kyle hit her was admissible. After a hearing pursuant to section 402, and over defendant's objection pursuant to section 352, the court allowed the prosecution to introduce the proffered evidence through Cassidy: the tent incident as well as the prior threat. The court found Cassidy credible for purposes of the 402 hearing and noted that the jury could decide how much, if any, of the testimony it believed.

At trial, Patricia Ritson testified that she worked with Tina for about four or five months between late 2018 and early 2019. During the first week of Tina's employment, Tina came to work with a black eye covered with makeup. When Ritson asked Tina about it, Tina said she got into a fight with her boyfriend Kyle and they both hit each other.

Cassidy testified that she periodically visited her mother at defendant's house, often staying overnight. At one point in the late summer or early fall of 2018, Cassidy heard Tina and defendant arguing and heard defendant threaten to hit Tina. However, Cassidy did not mention the threat during an interview by the prosecution's investigator—she only mentioned that defendant and Tina argued. On another occasion,

5

Cassidy and her girlfriend Veronica were sleeping in a tent on defendant's property when she woke to defendant screaming at and arguing with Tina. Cassidy heard "stuff crashing around." Tina came running out to the tent, crying and scared. Tina said that defendant had a gun, is acting crazy and threatened to shoot her, but everything was fine and don't worry. After Tina stayed in the tent with Cassidy and Veronica for about 30 minutes, she left. Cassidy testified that she never saw defendant push, hit or become physically aggressive with Tina.

The parties presented a stipulation concerning the statement of Veronica regarding the night Tina came into the tent she was in with Cassidy. The stipulation, which was read to the jury, said the following: Tina said she had been fighting with defendant; she saw defendant reach for a gun, so she ran out of the house.

Defense counsel sought to introduce evidence of multiple prior reports of domestic violence Tina apparently made against her husband Scott G. by filling out a form through the sheriff's department's website. Outside of the jury's presence, defense counsel argued they were false reports and relevant under section 1103 to challenge Tina's credibility. The discussion on the record indicates that a report was filed in July 2018, in which Tina alleged that Scott threatened to kill her and her family, pulled her hair, pushed her face into the couch and waved a knife in the air. Defense counsel discussed additional similar allegations by Tina against Scott, from different dates.

Defense counsel claimed that if Scott denied the allegation, then it was evidence of prior false allegations of domestic violence by the victim. As an offer of proof, defense counsel stated he expected Scott to testify that Tina's allegations of domestic violence were false: "My guess is having spoken to him is that all of these, according to him, never happened . . . which is consistent with the statement that he gave to law enforcement . . . in October of 2019" that Tina was a compulsive liar. Defense counsel argued that the victim's propensity to lie—to make false domestic violence allegations— was relevant to the prior domestic violence evidence.

6

The court examined the online reports and reviewed relevant case law.[3] It acknowledged that the evidence *could* be relevant in countering the section 1109 evidence that was provided, but only if the prior complaints were false. The trial court expressed concern that proving or disproving the truth of the allegations or whether it was actually Tina who made the online reports would be difficult since Tina would not be able to testify. The court contrasted the prior-complaint evidence proffered by the defense with the section 1109 evidence. With regard to the section 1109 evidence, there were other factors supporting the credibility of Tina's allegations—the injury observed by Ritson and the arguments overheard by Cassidy. The court further stated: "[T]his would just absolutely be a he said/she said without any opportunity for the individual to explain nor any other factors which would sufficiently support the contention that these allegations are false. These occurred, it appears, five -- five months prior to her demise, a little over five months prior to her demise. It's not apparent to the Court whether these were actually investigated or not. And so I'm having trouble with . . . whether they are sufficiently supported, where the Court is comfortable in allowing them to come in for the purpose of impeachment, that the prior 1109 evidence is, in essence, not credible. The Court notes that that 1109 evidence came in through other witnesses and what they observed and heard."

The court ultimately ruled that the incidents, except for one, were inadmissible under section 352, because the evidence was confusing, unduly time-consuming, and unduly prejudicial, and/or there was an insufficient basis for the contention that the allegations were false. The trial court allowed defense counsel to introduce evidence that

---

[3] The court reviewed *People v. Alvarez* (1996) 14 Cal.4th 155, *People v. Waldie* (2009) 173 Cal.App.4th 358, *People v. Franklin* (1994) 25 Cal.App.4th 328 and *People v. Neely* (1964) 228 Cal.App.2d 16.

7

in March 2016, there was an altercation involving Tina, Scott, and Scott's mother, Betty G.

Scott G. testified that he and Tina were a couple for eight to 10 years, and married for nearly the past two years. Between the latter part of 2018 through January 2019, Tina and Scott were separated and Tina told Scott she was living with a girlfriend in a different town. Scott suspected Tina was dating someone else but did not know Tina was actually living with defendant as defendant's girlfriend. Nevertheless, Scott saw Tina three or four times a week. She spoke about reconciling and the two continued to engage in a sexual relationship.

When questioned by defense counsel about an incident in March 2016, Scott could not clearly recall many details. He remembered he was with Tina; Tina was drunk and his mother came in and slipped. Not knowing that his mother slipped and fell, he left the area. He did not recall whether Tina "flipped out" and scratched him, or that he had to push Tina away from his mother. He remembered that he later woke up and the police were there.

Scott's mother, Betty testified that on one occasion in March 2016, Tina "came at" Scott during an argument and Betty tried to intervene. Tina was drunk and accidentally scratched and kicked Betty. Betty and Scott had to go inside the house to get away from Tina. Somebody, perhaps a neighbor, called the police.

Scott also testified that he did not remember ever seeing Tina with a black eye and that he did not give her one. Scott also testified that he probably told a police officer, in October 2019, that Tina was a compulsive liar. Scott explained that "every time she turned around she was doing some other lie."

Defendant denied giving Tina the black eye. Defendant testified that Tina told him that she got the black eye in a fight with another woman while at Scott's house. Defendant also admitted he owned a gun but said he did not keep it in the house and denied ever threatening Tina with a gun.

8

*B. Analysis*

*1. Evidence Code section 1109*

Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's propensity to commit such acts. (§ 1101.) This general rule is subject to exceptions, however, one of which is in cases involving domestic violence. (§ 1109.) Section 1109, in effect, " 'permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes. [Citation.]' " (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.) The admission of prior acts as propensity evidence encompasses both charged and uncharged acts. (See, e.g., *People v. Falsetta* (1999) 21 Cal.4th 903, 917-918.)

The admissibility of such evidence is still subject to the trial court's determination, pursuant to section 352, of whether the probative value of the evidence is substantially outweighed by the probability the evidence will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (*People v. Brown, supra*, 192 Cal.App.4th at p. 1233.) The law requires " ' "the probative value of the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." ' " (*People v. Thomas* (2021) 63 Cal.App.5th 612, 630, citing *People v. Culbert* (2013) 218 Cal.App.4th 184, 192.) " 'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.)

The court enjoys broad discretion in making this determination, and the court's exercise of discretion will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 480.) In

9

determining whether the trial court abused its discretion, we must focus on what the court was made aware of at the time it ruled on the motion; a party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct. (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208.) Evidentiary objections are forfeited if not timely raised in the trial court. (§ 353; *People v. Partida* (2005) 37 Cal.4th 428, 433-434.)

We agree with the People that defendant forfeited his objection to the evidence of the black eye admitted under section 1109 by failing to object on section 352 grounds. However, we do not see an abuse of judicial discretion in the trial court's decision to allow the introduction of the incidents of prior domestic violence. The prior acts of domestic violence were probative as they took place not long before Tina was killed and tended to show defendant's inclination for violence, or the threat of violence, during an argument, which could negate defendant's claim that he ran over Tina by accident. Juxtaposed against its probative value, the nature of the evidence of defendant's prior acts of domestic violence including a black eye and threats was not significantly more inflammatory than the charged offense, from which Tina died. (See *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) Finally, the evidence consumed a small amount of time relative to the rest of the trial and was straightforward, without any risk of confusing the issues for the jury.

While maintaining that the alleged acts of prior domestic violence or threats did not occur, defendant also argues that the admitted evidence did not reflect an increasing severity or regularity in violence as intended by the Legislature. The evidence was that defendant gave Tina a black eye on one occasion, threatened to shoot her on another occasion, then ran her over with his car. We have no difficulty in concluding this demonstrates an increased severity of violence. Moreover, defendant cites no cases, and we are aware of none, that requires a proponent of the evidence to show an increasing severity of violence as a prerequisite for admission at trial. In *People v. Kerley* (2018)

10

23 Cal.App.5th 513, the appellate court discussed the importance of allowing prior instances of domestic violence to show a propensity to commit such acts because otherwise, any escalating nature of domestic violence will be masked. (*Id.* at p. 535.) To be sure, when there is clear evidence of increasing frequency and severity, the probative value will infuse the propensity evidence with greater probative strength (*id.* at p. 536), but nothing in the language of section 1109 or related caselaw suggests evidence of a defendant's prior acts of domestic violence is only admissible if the domestic violence demonstrates increasing severity. Even one prior act of domestic violence may be relevant to show the defendant had a propensity to commit a charged act of domestic violence.

Defendant also contends the evidence was insufficiently corroborated to be admissible under section 1109. Under section 1109, a trial court must consider the existence of corroboration in the section 352 analysis for application of the Family Code section 6211 definition of "domestic violence." (§ 1109, subd. (d)(3).) However, contrary to the implication of defendant's argument, corroboration is not a strict requirement for admission. Section 1109, subdivision (d)(3) states in pertinent part: "Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." Although "consideration" is an important word in the statute, consideration of a factor (i.e., corroboration) does not mandate the existence of that factor. (*People v. Mani* (2022) 74 Cal.App.5th 343, 372.) The word "any" is also important; the nature of the corroboration can be anything that serves as corroboration. (*Id.* at p. 373.) Here, as the trial court found, Tina's contemporaneous report to a coworker that her visible black eye was sustained in a fight with defendant in which they both hit each other and Tina's report that defendant threatened to shoot her after Cassidy heard noises indicative of a fight can serve as

11

corroboration. (Cf. *Mani*, at p. 373 [concluding contemporaneous police reports may serve as corroboration of the event].) Thus, even if corroboration was a requirement, it exists here.

Defendant claims there was insufficient reliability of these claims such that the trial court erred in ruling them admissible. Defendant confuses the issue of whether the evidence was believable with whether it was admissible. Having found the evidence relevant under section 352, any credibility problems went to the weight of the evidence, not the statements' admissibility. The trial court noted as much in ruling on the motions to admit the evidence after the section 402 hearing. In addition, the jury was instructed that it was entitled to reject the evidence of prior instances as unbelievable. (See CALCRIM No. 852A.)

Defendant asserts that because he not convicted of the prior acts, the jury would be tempted to punish him for the current allegations. This is a legitimate factor for the court to consider when conducting the section 352 analysis. (*People v. Soper* (2009) 45 Cal.4th 759, 772-773; *People v. Tran* (2011) 51 Cal.4th 1040, 1047.) But we conclude the minimal potential for this under the circumstances in this case did not substantially outweigh the probative value we have concluded exists here. (See generally § 352; *People v. Mani, supra*, 74 Cal.App.5th at pp. 372-373.)

In a final attack, defendant argues that the propensity evidence admitted pursuant to section 1109 violated due process because it conflicts with federal law and fails to provide a safeguard where the evidence being weighed is inherently only slightly probative and highly prejudicial. Defendant acknowledges this court has determined the admission of prior acts of domestic violence under section 1109 is constitutional following the same rationale as applied by the Supreme Court in *People v. Falsetta, supra*, 21 Cal.4th at page 917 (determining admission of evidence of prior sex offenses pursuant to § 1108 is constitutional). (*People v. Johnson* (2000) 77 Cal.App.4th 410, 417.) Similar constitutional challenges have been repeatedly rejected, and courts have

12

held the admission of evidence pursuant to section 1109, as its counterpart section 1108, does not violate a defendant's rights to due process and equal protection. (*People v. Brown, supra*, 192 Cal.App.4th at p. 1233, fn. 14.) "[A]dmission of propensity evidence is not unfair so long as the trial court is required to balance the probative value of the evidence against its prejudicial impact under Evidence Code section 352." (*People v. Cabrera* (2007) 152 Cal.App.4th 695, 704.)

Nevertheless, defendant contends the reasoning in *Falsetta* was flawed and violated the long-standing policy of excluding propensity evidence in criminal matters. Defendant did not challenge at trial the constitutionality of admitting the evidence under section 1109, rather he argued the admission of such evidence was prejudicial under section 352. As such, he forfeited the due process contention. (*People v. Partida, supra*, 37 Cal.4th at p. 435 [a defendant "may not argue on appeal that due process required exclusion of the evidence for reasons other than those articulated in his Evidence Code section 352 argument"].) Even if we were to overlook the forfeiture, we conclude "the constitutionality of section 1109 under the due process clauses of the federal and state constitutions has now been settled." (*People v. Jennings, supra*, 81 Cal.App.4th at p. 1310.)

We conclude the trial court did not err in admitting the prior acts evidence under section 1109.

### 2. *Evidence Code section 1103*

Defendant also argues that the trial court erred in refusing to admit evidence that Tina made false allegations of domestic violence against Scott, in order to rebut the evidence of prior acts of domestic violence allegedly committed by defendant. The People disagree, arguing that the trial court, finding insufficient support for the evidence, did not abuse its discretion in excluding it. The People also argue that any error was harmless.

Although evidence of a person's character or trait of character is generally inadmissible to prove that person's conduct (§ 1101, subd. (a).), section 1103, subdivision (a) allows "evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted . . . if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character. [¶] (2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1)." A prior false accusation is relevant to credibility and may be admissible under section 1103. (*People v. Franklin, supra*, 25 Cal.App.4th at pp. 335-336.) If a "prior complaint was in fact true, it would have no relevance for impeachment whatsoever." (*People v. Alvarez, supra*, 14 Cal.4th at p. 201.)

The trial court has discretion under section 352 to exclude evidence of prior reports of assault if proof of the falsity of the prior complaint " 'would consume considerable time, and divert the attention of the jury from the case at hand.' [Citation.]" (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424.) We review a trial court's evidentiary rulings for an abuse of discretion. (*People v. Davis* (2009) 46 Cal.4th 539, 602.) A trial court will not be found to have abused its discretion unless it " 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.)

We agree with the People that the allegation that Tina filed false accusations of domestic violence against Scott was without any evidentiary support and the trial court properly excluded the evidence. Outside of the jury's presence, the parties discussed at length the proof problem inherent in the allegation that Tina made prior false complaints: Tina was not there to defend or explain the prior reports. Defense counsel speculated and said he "guessed" that Scott would testify that the prior complaints were false, but otherwise offered no actual evidence that could support the allegation that Tina lied. As

14

the trial court noted and as discussed *infra*, this evidence was qualitatively different than the evidence admitted pursuant to section 1109, as that evidence was corroborated. Indeed, the jury would only hear Scott's (presumably) self-serving testimony that the prior allegations were false. (See *People v. Alvarez, supra*, 14 Cal.4th at p. 201 [finding no error when the trial court excluded evidence of a prior "false" complaint when there was insufficient evidence to support the conclusion of falsity].)

Defendant had another problem with the prior reports, since Tina was not available to testify and defense counsel would be unable to prove it was actually her who filed the online reports.[4] Thus, the evidence could not be authenticated and would have resulted in undue prejudice because it would have allowed the jury to assume it was Tina who made the claims. The line of questioning would have confused and distracted the jury with an issue that, without evidence of its falsity, was not relevant.

Defendant next contends he was deprived of his constitutional right to present relevant defense evidence. A criminal defendant has a "constitutional right to present all relevant evidence of *significant* probative value in his favor," but not to " 'an unlimited inquiry . . . into collateral matters.' " (*People v. Jennings* (1991) 53 Cal.3d 334, 372.) To be admissible, " 'the proffered evidence must have more than "slight-relevancy" to the issues presented.' " (*Ibid.*, quoting *People v. Northrop* (1982) 132 Cal.App.3d 1027, 1042.)

As discussed above, the relevancy of the evidence under section 1103 could not be established without first determining the falsity of Tina's prior allegations of domestic violence against Scott. Because Tina was deceased and defense counsel had no other

---

[4] The form requires personal information, such as a name, address and an identification or driver's license number. Defense counsel offered to match Tina's driver's license or identification card number with the number provided on the online form, but otherwise offered no evidence to show it was actually Tina who reported the incidents rather than someone else using her identification information.

evidence to offer other than his speculation that Scott would testify the prior allegations against him were false, the trier of fact could not determine whether it was true that Tina made false reports.

### 3. Prejudice

Defendant's inability to counter Tina's allegation of violence through evidence of her prior false complaints against Scott did not prevent defendant from establishing his defense. The purpose of the excluded testimony was to impeach Tina's credibility. There was ample evidence introduced for this purpose. The jury heard from Scott that Tina was a compulsive liar and "every time she turned around she was doing some other lie." The jury also heard other weighty evidence of Tina's dishonesty, specifically the fact that she was romantically involved with her husband Scott (while separated from him and unbeknownst to defendant) while living with defendant as his girlfriend (unbeknownst to Scott).[5] We thus find that defendant was not prejudiced by the exclusion of the alleged prior false complaints.

Because we have concluded that the trial court did not err in admitting evidence under section 1109 or in excluding other evidence under section 1103, we conclude that, contrary to defendant's assertion, there was no prejudice to accumulate.[6] (*People v. Vargas* (2020) 9 Cal.5th 793, 839.)

---

[5] In addition, the parties stipulated that Tina was convicted of felony receiving stolen property in 2012 and second degree burglary in 2012.

[6] Defendant also claims, in essence, that because the trial court committed reversible error under state law, it thereby committed reversible error under the United States Constitution. As we have just rejected the assertion that the trial court erred under state law, we reject the federal constitutional claim as well. (See *People v. Alvarez, supra*, 14 Cal.4th at p. 202, fn. 12; *People v. Linton* (2013) 56 Cal.4th 1146, 1202.)

## II

### *Sentencing*

Defendant argues we must remand the matter to permit the trial court to reconsider the upper term sentences in light of recent statutory changes that apply to him retroactively. The People agree that the recent amendments apply retroactively to defendant, but disagree that resentencing is required. The People argue that because the trial court imposed the upper term based on defendant's recidivism, any error in the trial court's reliance on unproven prior convictions was harmless beyond a reasonable doubt.

### A. *Background*

During the sentencing hearing, the trial court stated that it read the probation report thoroughly and was struck by defendant's criminal history. The court noted 14 misdemeanor convictions starting between 1996 and 2001,[7] a felony conviction in 2002, another misdemeanor conviction in 2015, and two then-pending cases. The court stated, "That in and of itself to this Court would warrant an aggravated sentence." The court noted the existence of additional aggravating factors: the degree of cruelty, viciousness, and callousness of the act, noting that Tina suffered and felt disturbing injuries; utilizing the vehicle as a weapon; taking advantage of a position of trust to commit the offense, noting this was the "ultimate domestic violence"; and defendant's lack of remorse. In mitigation, the court noted that the victim provoked the response.

The court imposed an upper term of 11 years for count I, voluntary manslaughter. The court also imposed the upper term of six years for count II (vehicular manslaughter), the upper term of four years on count III (domestic violence) with an additional five years imposed pursuant to Penal Code section 12022.7 and one year pursuant to Penal Code section 12022, subdivision (b), and the upper term of four years on count IV (assault with

---

[7] These appear to be out-of-state convictions, suffered in the Commonwealth of Virginia.

a deadly weapon) with an additional five years imposed pursuant to Penal Code section 12022.7, but those sentences associated with counts II through IV were stayed pursuant to Penal Code section 654.

### B. Analysis

We agree with the parties that defendant is entitled to retroactive application of the ameliorative changes effected by Senate Bill No. 567 (2021-2022 Reg. Sess.) and Assembly Bill No. 518 (2021-2022 Reg. Sess.).  (See *People v. Jones* (2022) 79 Cal.App.5th 37, 45; *In re Estrada* (1965) 63 Cal.2d 740, 742.)  We also agree with defendant that he is entitled to a new sentencing hearing in light of these legislative changes.

### 1. Senate Bill No. 567 and Penal Code section 1170

In *Cunningham v. California* (2007) 549 U.S. 270, the United States Supreme Court explained, the Sixth Amendment to the Federal Constitution "proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham*, at pp. 274-275.)  The court held that the middle term prescribed in California's determinate sentencing law was the statutory maximum.  (*Id*. at p. 288.)  Subsequently, in *People v. Black* (2007) 41 Cal.4th 799, 816, the California Supreme Court held in relevant part that imposition of the upper term does not violate a defendant's Sixth Amendment jury trial right "so long as one legally sufficient aggravating circumstance has been found to exist by the jury," or has been "admitted by the defendant." A companion case, *People v. Sandoval* (2007) 41 Cal.4th 825, established that the erroneous imposition of an upper term is subject to federal harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18.

While this appeal was pending, Senate Bill No. 567 (2021-2022 Reg. Sess.) amended Penal Code section 1170, subdivision (b), providing that a trial court may impose an upper term sentence only where there are aggravating circumstances that

justify the imposition of a term exceeding the middle term and the defendant has either stipulated to the facts underlying those circumstances or those facts have been found true beyond a reasonable doubt. (Pen. Code, § 1170, subd. (b)(1)-(2); Stats. 2021, ch. 731, § 1.3, effective Jan. 1, 2022.) In making this determination, the "court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (Pen. Code, § 1170, subd. (b)(3); Stats. 2021, ch. 731, § 1.3.) "These amendments apply retroactively to [defendant] because his conviction was not final when this legislation took effect." (*People v. Flores* (2022) 75 Cal.App.5th 495, 500.)

Applying the above principles to this case, we find that defendant's Sixth Amendment right to a jury trial on the aggravating circumstances was not violated. However, we cannot say the same for the statute as amended by Senate Bill No. 567. (See e.g., *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109-1111.)

We first conclude that the imposition of the aggravated upper term does not violate defendant's right under the Sixth Amendment to the United States Constitution to have "any fact that exposes a defendant to a greater potential sentence . . . found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*People v. Sandoval, supra*, 41 Cal.4th at p. 835.) In this case, the trial court concluded that defendant committed the "ultimate domestic violence" when he killed Tina. In doing so, the court relied on three factors proven beyond a reasonable doubt when the jury found true the allegation that defendant inflicted corporal injury on a girlfriend and that in doing so, he used a deadly weapon and inflicted great bodily injury. (See Cal. Rules of Court, rule 4.421(a)(1) & (2).) While consideration of these factors individually would be impermissible because sentences were imposed for each, they cumulatively provide support for the trial court's conclusion. (See Cal. Rules of Court, rule 4.420; *People v. Coleman* (1989) 48 Cal.3d 112, 164-165 [dual use of facts to support a sentence imposed and as factors in aggravation prohibited];

*People v. Brown, supra*, 192 Cal.App.4th at p. 1237 [killing an intimate partner is " 'the ultimate form of domestic violence' "].) Accordingly, we have no constitutional concerns with defendant's upper term sentences. (See *People v. Black, supra*, 41 Cal.4th at p. 812 ["as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466] and its progeny, any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial"].)

Yet here the court relied upon additional factors that were not admitted by defendant, proven through certified records of conviction, or found true beyond a reasonable doubt by a jury. (Pen. Code, § 1170, subd. (b).) In addition to relying on prior convictions, the court relied on the aggravating circumstances of defendant's behavior involving a high degree of cruelty, viciousness and callousness and taking advantage of a position of trust to commit the offense and lack of remorse. As such, consideration of these other factors was improper under the newly amended statute.

"When a trial court has abused its discretion in choosing among available sentencing options, such as by relying on an improper sentencing factor, a reviewing court must still affirm unless 'the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) In these situations, the trial court has revealed which sentencing choice it prefers, and the reviewing court must decide whether there is a reasonable probability that the trial court's lawful exercise of discretion on remand will lead it to make a different choice." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 426.)

This requires application of the harmless error test in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) That test is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party

20

would have been reached in the absence of the error." (*Watson*, at p. 836; see also Cal. Const., art. VI, § 13; *People v. Zabelle, supra*, 80 Cal.App.5th at pp. 1112-1113.) " 'A "reasonable probability" "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." [Citation.] It "does not mean 'more likely than not,' but merely 'probability sufficient to undermine confidence in the outcome.' " [Citation.]' " (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.) The *Watson* test "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.) Reversal is necessary when there exists " 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result.' " (*People v. Mar* (2002) 28 Cal.4th 1201, 1225, *People v. Watson, supra*, 46 Cal.2d at p. 837.)

As applied here, this requires a two-step analysis. In the first step of our analysis, we ask whether the facts underlying the improperly determined aggravating circumstances would have been established in a statutorily permissible manner. (*People v. Watson, supra*, 46 Cal.2d at p. 836; Pen. Code, § 1170, subd. (b)(2).) Under *Watson*, this means we consider the comparative strength and weakness of the evidence supporting a finding of true against the evidence supporting a finding of not true. (*People v. Breverman, supra*, 19 Cal.4th at p. 177.) If there is at least "an equal balance of reasonable probabilities" between the two findings, reversal is required. (*Watson*, at p. 837; *People v. Mower* (2002) 28 Cal.4th 457, 484 [same].)

If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, we move to our second step in our analysis. (*People v. Dunn* (2022) 81 Cal.App. 5th 394, 410, pet. for review pending, ptn. filed Aug. 22, 2022, S275655.) Excluding any factors we cannot conclude would have been proven in a permissible manner, we examine the entire cause to see whether it is reasonably probable that the trial court would have imposed a more

favorable result, i.e., a more lenient sentence. (See *People v. Price* (1991) 1 Cal.4th 324, 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper"], superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165.) A reasonable probability of a more favorable result exists where the improper factor was determinative for the sentencing court or where the reviewing court cannot determine whether the improper factor was determinative. (*People v. Avalos* (1984) 37 Cal.3d 216, 233.)

After an examination of the record, we cannot determine whether the improperly considered factors were determinative in the trial court's selection of the upper term sentence in this case, and conclude that the matter must be remanded for resentencing.

Here, the court imposed the upper term of imprisonment based, in part, on defendant's recidivism. Although the People argue that defendant made apparent admissions regarding his criminal record in his motion for a mitigated sentence, we do not agree with this characterization. In the motion, defendant discusses his criminal record by noting "according to his 'RAP' sheet, his record consists of" several out of state convictions in addition to a 2015 misdemeanor battery in Amador County. That is not the equivalent of an admission that the prior convictions exist. Even if sufficient to constitute an admission that defendant has prior convictions, we have no evidentiary basis to conclude that the majority of his convictions, which were suffered in the Commonwealth of Virginia, qualify as convictions in this state. The fact remains that there were no certified records of conviction introduced to prove the existence and number of prior convictions, and the other factors relating to a qualitative assessment of his recidivism (i.e., the frequency and significance of prior offenses) were not stipulated to by defendant or submitted to a jury or the court and tested by the beyond a reasonable doubt standard. While it may be that the prosecutor could prove the existence of

defendant's prior convictions in a statutorily permissible manner, we need not determine the reasonable probability associated with that factor because the remaining aggravating circumstances at issue in this particular case rest on a somewhat vague or subjective standard and we find it difficult to conclude with confidence that, had the issues been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court.

By example, the circumstance relied on by the trial court that defendant's actions disclosed a high degree of cruelty, viciousness and callousness. (See Cal. Rules of Court, rule 4.421(a)(1).) Tina suffered tremendous catastrophic injuries. But the fact that the jury found defendant not guilty of murder in favor of voluntary manslaughter does not provide the requisite certainty that the jury believed the injuries were sustained through defendant's cruelty or viciousness. Therefore, we conclude there is a reasonable probability that the jury would have found this circumstance not true beyond a reasonable doubt.

What remains is an examination of whether there is a reasonable probability that defendant would have received a more lenient sentence based on this being the ultimate act of domestic violence. The record does not clearly indicate that the trial court weighed this factor more heavily than the factors it impermissibly considered. Stated differently, the record does not disclose that the trial court would have exercised its discretion to impose an upper term sentence based only on the permissible aggravating factors. Because we cannot conclude that the trial court would have selected an upper term sentence based only on this factor, we conclude that remand is necessary to allow the trial court to exercise its discretion consistent with the recent amendments to Penal Code section 1170. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].)

23

*2. Assembly Bill No. 518 and Penal Code section 654*

Another recent enactment, Assembly Bill No. 518 (2021-2022 Reg. Sess.), amended Penal Code section 654, subdivision (a), to provide in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (Stats. 2021, ch. 441, § 1.) Previously, under Penal Code section 654, "the sentencing court was required to impose the sentence that 'provides for the longest potential term of imprisonment' and stay execution of the other term. [Citation.] . . . [S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani, supra*, 74 Cal.App.5th at p. 379.)

"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. (See *United States v. Tucker* (1972) 404 U.S. 443, 447; *Townsend v. Burke* (1948) 334 U.S. 736, 741.) A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) In such circumstances, the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." (*Ibid*.; see *People v. Rodriguez* (1998) 17 Cal.4th 253, 257.)

The People argue that the trial court's statements regarding the aggravating factors as well as the imposition of the upper term on all counts demonstrate it would not choose a different count upon which to sentence defendant. It is possible that will indeed be the result after a new sentencing hearing. However, given the issues of proof with the factors relied upon to impose the upper term sentences discussed *infra*, we cannot say with

requisite certainty that the sentencing calculus will remain unchanged after the new sentencing hearing. Accordingly, we also find that remand is necessary to allow the trial court to exercise its new sentencing discretion under Assembly Bill No. 518 and Penal Code section 654.

As a final note, the abstract of judgment incorrectly lists the enhancement for great bodily injury associated with count III as pursuant to Penal Code section 12022.7, subdivision (d). The jury found true the great bodily injury allegation under subdivision (e) of Penal Code section 12022.7. We call the trial court's attention to this so that it may be corrected during the process of issuing an amended abstract of judgment following the new sentencing hearing.

## DISPOSITION

We reverse the sentence and remand the matter to the trial court so that it may resentence defendant consistent with amended Penal Code sections 1170 and 654. The clerk of the court is directed to take note of the correct subdivision under Penal Code section 12022.7 in issuing an amended abstract of judgment. The judgment is otherwise affirmed.

                                                 /s/
                                              EARL, J.

We concur:

    /s/
ROBIE, Acting P. J.


    /s/
RENNER, J.